UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHARLES L. LUDWIG,
KATHLEEN L. LUDWIG,
LUDWIG AUCTION & REALTY CO., INC., and
LARRY J. SCHNELZER,

                         Plaintiffs,                    DECISION AND ORDER

                                               05-CV-353(A)

     v.

THE CITY OF JAMESTOWN, NEW YORK, and
SCOTT L. BENSINK, in his individual and
official capacities,

                         Defendants.
_____


### Introduction

       Currently before the Court is a motion by the defendants, the City of

Jamestown, New York and Scott L. Bensink, for summary judgment pursuant to

Federal Rule of Civil Procedure 56 dismissing plaintiffs Kathleen L. Ludwig,

Ludwig Auction & Realty Co., Inc., and Larry J. Schnelzer from this action for lack

of standing.[1]  Oral argument was held on February 6, 2009.  For the reasons

indicated below, the motion is denied as to plaintiff Ludwig Auction & Realty Co.,

Inc. and granted as to plaintiffs Kathleen L. Ludwig and Larry J. Schnelzer.

_____

      [1]Defendants have not challenged the standing of plaintiff Charles L. Ludwig in
this motion.

**Background**

This action concerns the decision of the Jamestown Board of Public Utilities ("BPU") on January 11, 2005 to terminate electrical service to two properties, located at 15 and 19 Cross Street in Falconer, New York.  Plaintiff Charles Ludwig leased space at 15 Cross Street and owned 19 Cross Street. Plaintiff Ludwig Auction & Realty Co., Inc. is a business that was located at 15 Cross Street during the times relevant to this action.  Charles Ludwig operated the business, while plaintiff Kathleen Ludwig was the owner, sole shareholder, and president.  The business operated as an unincorporated entity until February 1993, and has operated as a corporation since.  Plaintiff Larry Schnelzer ("Schnelzer") subleased space at 15 Cross Street for a woodworking shop and storage area.  From a time prior to February 1993 until approximately January 25, 2005, the name on the BPU account for 15 Cross Street was "Ludwig Auction Realty."  The name on the BPU account for 19 Cross Street was Charles L. Ludwig during the times relevant to this action.

BPU disconnected service to both 15 and 19 Cross Street on January 11, 2005 because of past balances due on the account for each property.  At that time, Schnelzer did not have his own BPU account; he was receiving electricity for his subleased space through an alleged improper connection to the Ludwigs' service box.  After January 11, 2005, Schnelzer contacted BPU about taking over the account for 15 Cross Street, but was informed that he could not do so without

2

also assuming responsibility for the past balance due, at least some of which related to service that Mr. Ludwig had received for another property not involved in this action.  Schnelzer did not want to assume responsibility for the past balance due.  According to Schnelzer, BPU told him that the only way in which he could take over the 15 Cross Street account without paying the past balance due was if he installed his own meter and electric service box in his subleased space and rewired the space to receive electricity only from the new meter and service box.

Out of an apparent concern for the time that a rewiring of his entire space would take, Schnelzer proceeded with an installation of a new meter and service box, but rewired only about half of his subleased space before taking over the 15 Cross Street account.  Schnelzer supplied power to the rest of his subleased space by connecting his new wiring to the old service box on the property, the one that the Ludwigs had used prior to their disconnection and that still featured the alleged improper connection.

BPU began service to Schnelzer through the new service box and wiring on or around January 25, 2005.  On or around February 1, 2005, BPU informed Schnelzer that, because the alleged improper connection still existed, the Ludwigs now were receiving electricity when they should not.  A site inspection occurred on February 10, 2005.  BPU threatened to terminate service at 15 Cross Street by February 11, 2005 unless Schnelzer removed the improper connection

3

and cut power to the old service box that the Ludwigs had used.  Schnelzer

responded by removing the alleged improper connection and incurring the cost

necessary to install new wiring in the other half of his subleased space—the half

that he had not rewired initially.  Importantly, Schnelzer never experienced an

interruption in service after becoming a BPU customer on or around January 25,

2005.

## Discussion

"Summary judgment is appropriate when there is no genuine issue as to a

material fact, and the moving party is entitled to judgment as a matter of law.  All

inferences are drawn in favor of the non-moving party."  Hermès Int'l v. Lederer

de Paris Fifth Ave., Inc., 219 F.3d 104, 107 (2d Cir. 2000) (citations omitted).  "If

the movant satisfies the burden of establishing that there is no genuine issue of

material fact, then the burden shifts to the nonmovant to proffer evidence

demonstrating that a trial is required because a disputed issue of material fact

exists."  Weg v. Macchiarola, 995 F.2d 15, 18 (2d Cir. 1993).

Here, defendants have moved for summary judgment against three of the

four plaintiffs, contending that plaintiffs Kathleen L. Ludwig, Ludwig Auction &

Realty Co., Inc., and Larry J. Schnelzer never were customers of BPU and

therefore lack standing to bring a due process claim.  "The Article III limitations

are familiar: The plaintiff must show that the conduct of which he complains has

caused him to suffer an 'injury in fact' that a favorable judgment will redress."  Elk

4

Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 12 (2004) (citation omitted).  In the specific context of plaintiffs' Fourteenth Amendment claims, defendants are asserting through their motion that plaintiffs cannot point to "actions of government that work a deprivation of interests enjoying the stature of 'property' within the meaning of the Due Process Clause."  Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 9 (1978).

If defendants meet their summary judgment burden and make an initial showing that plaintiffs Kathleen L. Ludwig, Ludwig Auction & Realty Co., Inc., and Larry J. Schnelzer were not BPU customers during the times relevant to this action, then those plaintiffs will bear the burden of identifying triable issues of fact concerning property interests personal to them that were implicated by the January 11, 2005 disconnection of service by BPU.  "Property interests are not created by the Constitution, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . ."  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985) (internal quotation marks and citation omitted).  "When determining whether a plaintiff has a claim of entitlement, [courts] focus on the applicable statute, contract or regulation that purports to establish the benefit."  Martz v. Inc. Village of Valley Stream, 22 F.3d 26, 30 (2d Cir. 1994) (citation omitted).

**Standing of Ludwig Auction & Realty Co., Inc.**

Defendants claim that Ludwig Auction & Realty Co., Inc. lacks standing because it never was a BPU customer in its incorporated form.  Defendants state that the customer account for 15 Cross Street was in the name of "Ludwig Auction & Realty" since prior to February 1993, but that this entity was an "assumed name filed by Mr. Ludwig for the auction business he owned and operated."  Defendants state that Mr. and Ms. Ludwig incorporated the business in February 1993 as "Ludwig Auction & Realty Co., Inc.," but that they never informed BPU of this change.  According to defendants, had the Ludwigs informed BPU of the incorporation and posted a deposit for a non-residential account, the account would have been changed.  Defendants explained at oral argument that the change in corporate status is significant because the past balance due on the 15 Cross Street account was carried over from service that Charles Ludwig received personally at another property in the past.  As a result, defendants argue, the corporation owes no money to BPU, and BPU would have had no grounds to disconnect service at 15 Cross Street had the corporation been the customer there.

In opposition, plaintiffs refer generally to prior deposition testimony and exhibits indicating that the assumed name is an assumed name under the corporation, and that a termination notice for 15 Cross Street dated December 14, 2004 from BPU was addressed to "Ludwig Auction & Realty."  Plaintiffs cite to

6

a service change form dated July 24, 1995 as evidence that the corporate entity received customer service from BPU after February 1993, when the change in corporate status occurred. Plaintiffs also attach to their memorandum of law in opposition copies of an electric bill and of receipts for payments on the account for 15 Cross Street that list "Ludwig Auction Realty" as the customer for that property.

Disputed factual issues about the relationship between Ludwig Auction & Realty Co., Inc. and the BPU accounts for 15 and 19 Cross Street preclude summary judgment. Both parties have provided exhibits demonstrating that the customer listed for the BPU account for 15 Cross Street was "Ludwig Auction Realty." Defendants assert that this listing reflects the unincorporated business and not the corporation, but they have not explained why a change in corporate status would matter to BPU. The company, whether incorporated or not, was the same company at all relevant times and was the sole customer at 15 Cross Street from a time prior to February 1993 until late January 2005, when Schnelzer took over the account. Mr. Ludwig has testified at a deposition that the assumed name was "an assumed name under Ludwig Auction & Realty Company, Inc." Defendants concede that Mr. Ludwig paid utility bills for 15 Cross Street with corporation funds after incorporation occurred in February 1993. Finally, Exhibit C to Mr. Wright's affidavit in support of the pending motion also contains a bill for 19 Cross Street, also dated December 29, 2004. The customer listed on

7

that bill is Charles L. Ludwig, but Mr. Ludwig mentioned in a prior affidavit that the

corporation holds that account as well.  Under these circumstances, plaintiffs

have identified triable issues of fact regarding the corporation's standing.

Plaintiffs have made enough of a showing that the corporation may have a

property interest at stake in this action, that a jury should be allowed to examine

the history between the company and BPU more closely.  A jury also should be

allowed to examine whatever significance BPU's policies might attach to a

change in corporate status.  Defendants' motion is therefore denied as against

Ludwig Auction & Realty Co., Inc.

### Standing of Kathleen L. Ludwig

Defendants challenge Ms. Ludwig's standing on the grounds that she never

was a BPU customer and has no connection to this action except as sole

shareholder of Ludwig Auction & Realty Co., Inc.  Ms. Ludwig argues that, as the

sole shareholder of a BPU customer, she has the right to bring this action on

behalf of her corporation.

Based on the allegations in the complaint, Ms. Ludwig lacks standing in

any individual capacity.  Shareholders generally cannot sue to enforce the rights

of their corporations.  "[T]he so-called shareholder standing rule . . . . is a

longstanding equitable restriction that generally prohibits shareholders from

initiating actions to enforce the rights of the corporation unless the corporation's

management has refused to pursue the same action for reasons other than

8

good-faith business judgment.  There is, however, an exception to this rule

allowing a shareholder with a direct, personal interest in a cause of action to bring

suit even if the corporation's rights are also implicated."  Franchise Tax Bd. of

Cal. v. Alcan Aluminum Ltd., 493 U.S. 331, 336 (1990) (citation omitted).  Here,

the complaint alleges that Ludwig Auction & Realty Co., Inc. suffered a loss and

deprivation of property and a loss of profits as a result of the termination.  Ms.

Ludwig alleges damages in the complaint, but does not allege that these

damages resulted from any event other than the disconnection of service to her

corporation.  Plaintiffs' papers in opposition to the pending motion explain that

Ms. Ludwig's damages consist solely of "financial damage" that she suffered "co-

extensively" with losses that the corporation allegedly suffered because of BPU's

disconnection on January 11, 2005.   At no time in the complaint does Ms.

Ludwig allege that defendants breached any duty or obligation owed to her as an

individual, apart from any duty or obligation that defendants may have owed the

corporation.  Cf. Rand v. Anaconda-Ericsson, Inc., 794 F.2d 843, 849 (2d Cir.

1986) (holding that plaintiffs lacked standing to sue a creditor of their corporation

and the creditor's affiliates under antitrust and anti-racketeering laws because

"[t]he legal injury, if any, was to the firm.  Any decrease in value of plaintiffs'

shares merely reflects the decrease in value of the firm as a result of the alleged

illegal conduct").  Consequently, Ms. Ludwig lacks standing to bring the claims

alleged in the complaint and is dismissed from this action.  Any damages that Ms.

Ludwig suffered will be redressed through the corporation's action against defendants.

### Standing of Larry J. Schnelzer

Defendants challenge Schnelzer's standing on the grounds that he was not a BPU customer when service at 15 Cross Street was terminated on January 11, 2005, and thus had no relationship with BPU that would have warranted due process or protection of property rights.  Schnelzer does not dispute that he was not a BPU customer as of January 11, 2005.  Rather, Schnelzer contends that he became a customer of BPU on or around January 25, 2005, when he took over the 15 Cross Street account.  Once Schnelzer took over the 15 Cross Street account, he volunteered to pay for all electricity consumed there regardless of who consumed it.  Schnelzer also characterizes the alleged improper connection as equivalent to a valid connection between a main electrical panel and a subpanel.  Thus, according to Schnelzer, BPU's insistence that Schnelzer rewire the last half of his subleased space was unnecessary and was the source of his injuries in this action.

Schnelzer's arguments do not refute defendants' showing that he has no property interest at stake in this action.  Schnelzer did not become a customer of BPU until approximately January 25, 2005.  Schnelzer thus lacks standing to challenge any action that BPU took before then.  See Golden v. City of Columbus, 404 F.3d 950, 956 (6th Cir. 2005) (requiring evidence of a contractual

relationship to establish a property interest).  After January 25, 2005, when

Schnelzer took over the 15 Cross Street account and was a BPU customer, he

suffered no service disconnections or interruptions from BPU.

The only claim that Schnelzer can advance against BPU is that BPU

threatened him with disconnection had he refused to remove the alleged

improper connection.  This claim does not constitute a deprivation of a property

interest for two reasons.  First, Schnelzer chose voluntarily to comply with BPU's

requirement to remove the connection before BPU disconnected service.  No

deprivation thus occurred.  Second, Schnelzer has not substantiated his

disagreement with BPU over the nature of his wiring.  There is evidence in the

record suggesting that the connection that Schnelzer established between his

service box and the Ludwigs' service box violated the National Electrical Code

and posed a safety hazard.   In response, Schnelzer has offered only his own

conclusory, self-serving assertions that he did not believe his connection to be

improper.  Cf. BellSouth Telecomm., Inc. v. W.R. Grace & Co.-Conn., 77 F.3d

603, 615 (2d Cir. 1996) (rejecting self-serving affidavits as insufficient to raise a

triable issue of fact).  Schnelzer has not submitted any factual assertions from an

electrical wiring expert asserting what physical characteristics of the connection

are proper under applicable codes.  "The object of [Rule 56(e)] is not to replace

conclusory allegations of the complaint or answer with conclusory allegations of

an affidavit.  Rather, the purpose of Rule 56 is to enable a party who believes

there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888-89 (1990) (citations omitted).  Under these circumstances, Schnelzer cannot show that BPU deprived him of any property interest, making summary judgment appropriate. Schnelzer accordingly is dismissed from this action.

## Conclusion

For all of the foregoing reasons, defendants' motion for summary judgment is denied as to plaintiff Ludwig Auction & Realty Co., Inc. and granted as to plaintiffs Kathleen L. Ludwig and Larry J. Schnelzer.  The parties are directed to appear on **Friday, March 6, 2009** at **9:00 a.m.** for a status conference to set a trial date.


SO ORDERED.

s/ _Richard J. Arcar_a
HONORABLE RICHARD J. ARCARA
CHIEF JUDGE
UNITED STATES DISTRICT COURT

DATED:  February 25, 2009